Timothy J. Petumenos, ABA #7611147
Law Office of Tim Petumenos, LLC
1227 W. 9th Avenue, Suite 200
Anchorage, AK 99501
Telephone: 907.276.2676

Adam W. Cook, ABA #0611071
Birch Horton Bittner & Cherot
1127 W. 9th Avenue
Anchorage, AK 99501
Telephone: 907.276.1550
Facsimile: 907.276.3680

Attorneys for Plaintiff
ALASKA SPECIALTY HOSPITAL, LLC
d/b/a ST. ELIAS SPECIALTY HOSPITAL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA SPECIALTY HOSPITAL, LLC d/b/a ST. ELIAS SPECIALTY HOSPITAL, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, and PREMERAFIRST, INC., <br><br> Defendants. | Case No.: 3:15-cv-_____ (___) |

## **COMPLAINT**

COMES NOW Plaintiff, Alaska Specialty Hospital, LLC, d/b/a St. Elias Specialty Hospital, by and through undersigned counsel, Law Offices of Tim

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

Petumenos and Birch Horton Bittner & Cherot, and hereby complains and alleges as follows:

## PARTIES AND JURISDICTION

1. Alaska Specialty Hospital, LLC, d/b/a St. Elias Specialty Hospital ("St. Elias") is an Alaska limited liability corporation in good standing with the State of Alaska.

2. The United States Office of Personnel Management ("OPM") is an independent agency of the United States government.

3. PremeraFirst, Inc. ("PremeraFirst") is, on information and belief, a Washington corporation, organized and existing under the laws of the State of Washington, and doing business in Alaska.

4. This is an action against OPM, brought pursuant to the Federal Employees Health and Benefits Act, 5 U.S.C. § 8901, *et seq*. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 8912.

5. Because this is an action arising under the laws of the United States, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6. Because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(3) because a substantial part of the events or omissions giving rise to the claims herein occurred in the District of Alaska.

## **GENERAL ALLEGATIONS**

8. Plaintiff hereby realleges and incorporates the allegations contained in paragraphs 1 through 7 as though fully restated herein.

9. St. Elias is a long-term, acute-care hospital located in Anchorage, Alaska.

10. Defendant PremeraFirst is a wholly-owned subsidiary of Premera Blue Cross. Premera Blue Cross is a multi-state health insurance company providing coverage in Washington and Alaska.

11. Premera Blue Cross provides health benefits to subscribers through its Blue Cross Blue Shield Federal Employee Health Benefits Program ("FEP" or the "Plan").

12. PremeraFirst acts as an "intermediary" on behalf of the Plan, entering into contracts with healthcare providers on behalf of the Plan for the provision of healthcare services for Plan subscribers.

13. On March 15, 2009, PremeraFirst and St. Elias entered into a Facility Agreement (the "Facility Agreement"). The Facility Agreement provided that PremeraFirst would compensate St. Elias directly for "covered services" provided to Plan subscribers by St. Elias. A true and correct copy of the Facility Agreement is attached hereto as Exhibit 1.

14. "Covered services" was defined in the Facility Agreement as medically-necessary health care services or supplies for which benefits are provided by a Plan under a subscriber agreement.

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

15. The Facility Agreement provided that St. Elias would bill the Plan for Covered Services provided to Plan subscribers. The Plan (with PremeraFirst acting on its behalf) would evaluate these claims and make decisions about eligibility for benefits and the medical necessity of the services provided.

16. The Facility Agreement also included a Refund Provision, stating that St. Elias "agrees to refund to Plan any payments if the payment was based upon erroneous or incomplete information, if benefits are misapplied by the Plan, if an Enrollee is not entitled to those benefits, or any other reason for an erroneous payment."

17. The Facility Agreement further provided that if St. Elias did not refund an incorrect payment within 60 calendar days of receipt of the written request for a refund, the Plan would have the right to "deduct the overpayment amount from future payment vouchers to Facility."

18. The Plan's ability to determine whether payments were "erroneous" and then demand or deduct refunds was not absolute. The Facility Agreement also provided: "Notwithstanding any other provision of this Agreement, nothing in this Agreement shall be construed to modify the rights and benefits contained in the Enrollee's Subscriber Agreement."

19. The Facility Agreement thus provided that any rights of appeal of a decision by PremeraFirst contained in an enrollee's subscriber agreement were preserved, and would be acknowledged by the Plan, notwithstanding an initial determination by the Plan that payment to St. Elias was erroneous because the enrollee had received care that was "not medically necessary."

20. At all relevant times, PremeraFirst acted as agent on behalf of the Plan with respect to the provisions of the Facility Agreement governing payment of benefits, refunds and recoupment. For this reason, "PremeraFirst" and "the Plan" are sometimes used synonymously in this Complaint.

21. On August 18, 2011, R.S. was admitted to St. Elias for long-term acute care. R.S. suffered from end-stage Amyotrophic Lateral Sclerosis ("ALS"), sometimes referred to as Lou Gehrig's Disease. R.S.'s medical condition had progressed to the point of almost total paralysis by the time of his admission, making long-term acute care necessary.

22. The circumstances of R.S.'s admission made it clear that care at his home was not feasible. In July 2011 a social worker filed a report of neglect with the State of Alaska's Adult Protective Services, stating that R.S., as a vulnerable adult, could not be discharged from hospitalization due to his inadequate home situation. St. Elias was thus aware from the first day of his admission that discharge of R.S. to home care was impermissible.

23. R.S. was a former federal employee, and an enrollee in the Plan.

24. Over the next three years, the Plan conducted regular and numerous clinical reviews of R.S. The Plan issued repeated authorizations for R.S.'s continued stay at St. Elias as medically necessary under the Plan.

25. Meanwhile, R.S.'s condition deteriorated. He was bedridden, placed on mechanical ventilation, and received high doses of narcotic medications intravenously. Consequently, his acute care was clinically indicated over the next three years.

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

26. However, even as R.S.'s condition deteriorated, the Plan requested that St. Elias move R.S. to a lower level of care which was not available anywhere in Alaska. The Plan first denied authorization for continued inpatient care at St. Elias on September 5, 2014, when it wrote to R.S. that his long-term ventilator and clinical needs could be supported by a nursing home, making his care at St. Elias "not medically necessary" (the "Adverse Determination").

27. G.S., R.S.'s wife and court-appointed conservator, authorized St. Elias to pursue an appeal of the Adverse Determination. The appeal process is described in Section 8 of the Blue Cross Blue Shield Service Benefit Plan document (i.e. the "FEP document" and "subscriber agreement").

28. St. Elias appealed the Adverse Determination on September 15, 2014. The appeal gave a detailed description of R.S.'s situation, including statements from R.S.'s attending healthcare professionals, who opined that discharging R.S. to home care would be a death sentence.

29. The appeal also noted that no nursing facility in Alaska would accept R.S. because of his advanced healthcare needs, and that no lower level of care was feasible. Relocation to out-of-state care was also out of the question because the Plan would not cover the requisite medevac costs, which R.S. could not afford.

30. On October 29, 2014, the Plan denied the appeal of the Adverse Determination. For the first time, the Plan asserted that long-term acute care at St. Elias was "not medically necessary" under the Plan.

31. As required under Section 8 of the FEP document, St. Elias requested reconsideration of the Plan's decision on appeal. On February 19, 2015, St. Elias

delivered its request, providing additional evidence that R.S.'s continued care at St. Elias was indeed medically necessary.

32. Ongoing developments on the financial side of the parties' dispute compounded the urgency of the situation. Despite the initial denial of benefits and ensuing appeal and request for reconsideration, the Plan continued paying sums to St. Elias for R.S.'s medical care.

33. The payments, each made by the Plan following a weekly service period, continued until January 2015. By the time the Plan stopped paying claims, the Plan had remitted $786,467.10 to St. Elias.

34. On February 23, 2015, before PremeraFirst had even issued a decision on the request for reconsideration of the Adverse Determination, PremeraFirst notified St. Elias that its payments to St. Elias for R.S.'s care constituted erroneous "overpayments," and that St. Elias was obligated to immediately reimburse PremeraFirst for the funds it received per the Facility Agreement.

35. In the February 23 letter, the FEP Recovery Department at Blue Cross demanded a total of $270,450.24 for sums paid through January 9, 2015. The Plan planned to recover its sums through "recoupment," which consisted of denying payment to other St. Elias patients enrolled in the FEP. Instead of payment to St. Elias following claims for services rendered, Blue Cross simply kept the money intended to reimburse these third-party patients for their care.

36. While the "recoupment" remedy was arguably available to the Plan under the Facility Agreement in certain circumstances, it was improperly asserted by the Plan. In the first place, there had been no decision yet on the request for

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

reconsideration of the Adverse Determination, and thus no "erroneous reimbursement" to recoup. In the second place, unilateral exercise of the remedy disregarded the existence of a dispute between the parties and the need for dispute resolution per the terms of the Facility Agreement.

37. Compounding matters, St. Elias was not in a financial position to bear a loss of more than a quarter of a million dollars. Blue Cross' recoupment efforts put tremendous financial strain on St. Elias. It also put St. Elias in the untenable position of collecting on patients with valid, reimbursed claims, which had been recouped by the Plan with no notice to those parties.

38. St. Elias, seeking for a way to stave-off "recoupment" until the reconsideration request was decided, contacted PremeraFirst on March 3, 2015 and gave notice of the existence of a dispute. St. Elias invoked paragraph 8.01 of the Facility Agreement, which prescribes a dispute resolution process.

39. Paragraph 8.01 of the Facility Agreement requires that the parties first engage in "good faith discussions" by means of a meeting between them within 10 days of Blue Cross' receipt of written notice of a dispute. In the event that good faith discussions are unsuccessful, the Facility Agreement further provides that the parties submit the dispute to a mutually-agreeable mediator within 30 days of the failed meeting. If mediation fails, then either party may file a lawsuit within 60 days of that failure.

40. On March 16, 2014, the parties conducted an informal discussion by telephone. The PremeraFirst representative at the meeting, Missy Smith, indicated that the dispute resolution process in the Facility Agreement applied to the parties'

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

dispute. Ms. Smith stated that PremeraFirst would agree to extend the deadline for mediation and suspend recoupment efforts until after a decision on St. Elias' request for reconsideration of the Adverse Determination was issued.

41. PremeraFirst wrote to St. Elias on March 24, 2015 with an about-face. PremeraFirst stated that the dispute at issue was a Medical Necessity Determination. Consequently, paragraph 8.01 of the Facility Agreement did not apply, and St. Elias should use the "extensive disputed claims process" under FEP and described in Section 8 of the FEP document.

42. PremeraFirst's March 24, 2015 letter operated as denial of a meeting for good faith discussions and/or mediation, despite the requirement of same in the Facility Agreement.

43. The Plan denied the request for reconsideration of the Adverse Determination on March 24, 2015.

44. The Federal Employees Health Benefits Act, 5 U.S.C. § 8901, *et seq.*, provides that a subscriber in a Federal Employee Program may appeal a denial of benefits to the Office of Personnel Management ("OPM"). Moreover, 5 CFR § 890.105(e)(1)(i) provides that the deadline for the appeal is 90 days from issuance of the Plan's denial of reconsideration.

45. The question faced by St. Elias was, in which forum its appeal of the March 24, 2015 decision regarding reconsideration of the Adverse Determination belonged. Relying on PremeraFirst's refusal to follow paragraph 8.01 of the Facility Agreement as its guide, and the procedures set forth in the FEP and Section 8 of the Blue Cross Blue Shield Service Benefit Plan, St. Elias turned to OPM.

46. On June 12, 2015, St. Elias appealed the decision on reconsideration to OPM. St. Elias included with its appeal a Request for Stay Pending Appeal. The Request asked that OPM instruct PremeraFirst to cease the recoupment process for the pendency of the OPM appeal, and disgorge to St. Elias the sums recouped to date. G.S. had given St. Elias express authorization to pursue the appeal in an affidavit on May 22, 2015. OPM took delivery of the appeal on June 16, 2015.

47. During June 16-21, 2015, counsel for St. Elias spoke with representatives at OPM regarding the appeal. OPM informed counsel that OPM was not the proper forum for the appeal. They stated that the dispute at issue was "between the provider and the insurer," and thus an appeal pursuant to the Federal Employee Health Benefits Act was unavailable to R.S. and/or St. Elias.

48. What followed was nothing short of a runaround. PremeraFirst refused to agree to mediation pursuant to paragraph 8.01 of the Facility Agreement, claiming that the dispute belonged with OPM. Meanwhile, OPM orally communicated to counsel for St. Elias that its appeal was not properly before OPM because it was an issue for the Facility Agreement, but has not, despite repeated requests, formally informed St. Elias that its appeal will not be heard and that St. Elias could obtain review from this Court, having exhausted its administrative remedies based upon OPM's action.

49. 5 C.F.R. 890.105(e)(4) provides that OPM must, within 90 days of its receipt of an appeal of a denial of benefits, either: (1) give written notice of its decision on appeal to the covered person and their insurance carrier, or (2) notify the covered individual of the status of the review.

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

50. On September 14, 2015, the 90-day period for an OPM decision passed without either a notice of decision or notification of the status of the OPM review.

51. OPM's "non-decision" has operated as a *de facto* decision to affirm the denial of benefits to R.S.

52. In the meantime, PremeraFirst has not agreed to submit to mediation, as required in Paragraph 8.01 of the Facility Agreement.

53. PremeraFirst has, however, suspended its "recoupment" efforts. Nonetheless, to date PremeraFirst has "recouped" nearly $350,000 from St. Elias. These efforts have put tremendous financial strain on St. Elias, which is entitled to an avenue of dispute resolution which so far has been unilaterally determined by Blue Cross without independent review.

## COUNT ONE
## Improper Denial of Benefits (OPM)

54. Plaintiff hereby realleges and incorporates the allegations contained in paragraphs 1 through 53 as though fully stated herein.

55. R.S.'s enrollment in the Plan entitled him to coverage of claims submitted by qualified providers following provision of medically-necessary healthcare services.

56. R.S., at all relevant times, required the medically-necessary services of a long-term, acute-care hospital.

57. OPM's September 14, 2015 "non-decision" effectively affirmed PremeraFirst's denial of benefits to R.S. This was a denial of benefits by OPM.

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

58. OPM's denial of benefits is a violation of the Plan and of the Federal Employees Health Benefits Act.

## COUNT TWO
### Breach of Contract (PremeraFirst)

59. Plaintiff hereby realleges and incorporates the allegations contained in paragraphs 1 through 58 as though fully stated herein.

60. A dispute exists between St. Elias and PremeraFirst.

61. Paragraph 8.01 of the Facility Agreement between St. Elias and PremeraFirst specified a process for dispute resolution.

62. By refusing to follow the terms of the Facility Agreement's dispute resolution provision, and by directing St. Elias to file an appeal with OPM instead, PremeraFirst breached the Facility Agreement.

63. As a result of the breach by PremeraFirst, St. Elias has sustained, and continues to sustain, damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, Alaska Specialty Hospital, LLC d/b/a St. Elias Specialty Hospital, prays for the following relief against Defendants, the United States Office of Personnel Management and/or PremeraFirst, Inc.:

1. A declaratory judgment declaring the proper venue for resolution of R.S.'s appeal and/or a declaration that St. Elias has, under the circumstances, complied with the prerequisites and preconditions to proceeding before this Court.

2. In the event that this Court finds OPM's September 14, 2015 decision is properly on appeal, an order reversing that decision and finding that R.S. required

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

the medically-necessary services of a long-term, acute-care hospital, and that PremeraFirst must therefore reimburse St. Elias for covered services.

    3.    An injunction ordering PremeraFirst to desist from undertaking any further recoupment of funds from St. Elias.

    4.    An order enjoining PremeraFirst to disgorge sums recouped to date back to St. Elias.

    5.    An award of actual losses incurred by St. Elias due to PremeraFirst's breach of the Facility Agreement.

    6.    For an award of costs, expenses and reasonable attorneys' fees incurred in prosecuting this action, as well as pre-judgment and post-judgment interest.

    7.    Such other relief as this Court deems just and proper.

DATED this 17th day of September, 2015.

        LAW OFFICES OF TIM PETUMENOS
        Attorneys for Plaintiff


        By:  /s/ Timothy J. Petumenos_____
            Timothy J. Petumenos, ABA #7611147
            Law Office of Tim Petumenos, LLC
            1227 W. 9th Avenue, Suite 200
            Anchorage, AK 99501
            Telephone:   907.276.2676

ALASKA SPECIALTY HOSPITAL V. OPM     CASE NO. 3:15-CV-_____ (\_\_\_)
COMPLAINT     PAGE 13 OF 14
F:\507088\13\00471666.DOCX
Case 3:15-cv-00171-TMB   Document 1   Filed 09/17/15   Page 13 of 14

BIRCH HORTON BITTNER & CHEROT
Attorneys for Plaintiff

By: /s/ Adam W. Cook
Adam W. Cook, ABA #0611071
Birch Horton Bittner & Cherot
1127 W. 7th Avenue
Anchorage, AK 99501
Telephone: 907.276.1550
Facsimile: 907.276.3680

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

ALASKA SPECIALTY HOSPITAL V. OPM                    CASE NO. 3:15-CV-_____ (___)
COMPLAINT                                                              PAGE 14 OF 14
F:\507088\13\00471666.DOCX
Case 3:15-cv-00171-TMB   Document 1   Filed 09/17/15   Page 14 of 14